UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS QUINTANA,

                Petitioner,

  -v-

JOSEPH McCOY,

                Respondent.

Case No. 03-CV-5747 (KMK)

ORDER

APPEARANCES:

Nicholas Quintana
New York, New York
Pro Se *Petitioner*

Zaharah R. Markoe, Esq.
Elisabeth F. Bernhardt, Esq.
Bronx District Attorney's Office
Bronx, New York
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

      In a Report and Recommendation dated November 18, 2004, Magistrate Judge James C. Francis IV recommended that this petition for writ of *habeas corpus* ("Petition") under 18 U.S.C. § 2254 be denied. Petitioner timely filed objections to the Report and Recommendation ("Objections"). Upon a *de novo* review of Petitioner's objections, this Court adopts in substantial part Magistrate Judge Francis's Report and Recommendation and denies the Petition.

## I. Background

      On October 6, 1995, Petitioner was indicted for Attempted Murder in the Second Degree in violation of New York Penal Law §§ 110.00 and 125.25(1), two counts of Assault in the First Degree in violation of Penal Law § 120.10(1) and (2), two counts of Criminal Use of a Firearm

in the First Degree under Penal Law §§ 265.09(1) and (2), Criminal Possession of a Weapon in the Third Degree under Penal Law § 265.02(4), and Criminal Possession of a Weapon in the Fourth Degree under § 265.01(1).[1]  Petitioner had allegedly shot the victim in the leg on March 24, 1995.  (Tr. 46-48, June 2, 1997)  On September 13, 1995, the day of his arrest, Petitioner had encountered the victim on the street, where the two engaged in a physical fight until Petitioner was arrested.  (Tr. 52-53, June 2, 1997)

After several adjournments, trial began in May 1997.  At trial, Petitioner claimed that he had been attacked at the time of his arrest by three men who beat him to unconsciousness.  He did not remember having any conversations with the victim of his attack or the police, and he remembered none of the details after his attack.  He claimed he awoke in the hospital, unaware that he was under arrest.  (Tr. 341-49, June 2, 1997)

During trial, the prosecutor questioned Petitioner about the fact that Petitioner's former domestic partner was incarcerated for selling drugs.  Petitioner's attorney objected and requested a mistrial, arguing that Petitioner was not charged with a drug offense and such testimony could only taint the jury.  (Tr. 357-59, June 2, 1997)  However, since the defense had previously questioned Petitioner about his domestic partner, the court held that the line of questioning was acceptable.  (Tr. 359-60, June 2, 1997)  Further, in its cross-examination of a police officer, the defense had asked whether Petitioner appeared to be a drug user.  (Tr. 228-29, June 2, 1997)

The officer further testified that Petitioner had two wallets with identification in his possession, and when the prosecutor asked if he recalled whether the second identification

---

[1] The Report and Recommendation erroneously refers to Ind. No. 6735/95, instead of Ind. No. 6725/95.  (Report and Recommendation 4)

belonged to Petitioner, the officer responded, "No." (Tr. 195, June 2, 1997) The defense objected on the basis that the question suggested that Petitioner was a thief, but defense counsel did not dispute that the wallets were related to Petitioner's claim that he had been robbed. Still, counsel objected to the question pertaining to the identifications in the wallets on the ground that it would lead the jury to infer that Petitioner had committed robbery, a crime with which Petitioner was not charged. (Tr. 197-98, June 2, 1997) The court allowed questioning on the subject, finding that it helped establish that the defendant had no identification of any kind on his person at the time of his arrest. (Tr. 205-06, June 2, 1997)

The jury found Petitioner guilty of two counts of Assault in the First Degree, and on June 26, 1997, he was sentenced to concurrent terms of imprisonment of four to twelve years. Petitioner was released on parole on September 8, 2003. (Letter from Petitioner to the Court, Sept. 11, 2003)

Petitioner appealed to the Appellate Division, First Department, claiming (1) that he was denied his right to a speedy trial; (2) that he was denied his due process right to a fair trial because of the admission of irrelevant and prejudicial evidence; and (3) that the verdict was against the weight of the evidence. Brief for Defendant-Appellant at 17-54, *People v. Quintana*, No. 6725/95 (N.Y. Sup. Ct. Nov. 17, 2000). The Appellate Division rejected Petitioner's claims, holding that: (1) "[t]he verdict was not against the weight of the evidence . . . [as] [i]ssues of credibility . . . were properly considered by the trier of facts"; (2) the defendant "was not deprived of a fair trial by two references to possible uncharged criminal activity that were too brief and vague to have had any impact on the jury"; and (3) the "[d]efendant's speedy trial motion was properly denied . . . [as] the total amount of chargeable time did not exceed the

3

statutory limit [and] . . . defendant was not deprived of his constitutional right to a speedy trial." *People v. Quintana*, 731 N.Y.S.2d 4, 5 (N.Y. App. Div. 2001).

On November 2, 2001, Petitioner's attorney filed for leave to appeal to the Court of Appeals, and Petitioner submitted a *pro se* supplemental leave application. These applications were denied on December 27, 2001, *People v. Quintana*, 764 N.E.2d 406 (N.Y. 2001), and April 19, 2002, *People v. Quintana*, 771 N.E.2d 842 (N.Y. 2002), respectively.

On May 3, 2002, Petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division, arguing that his trial and appellate attorneys were ineffective. The Appellate Division denied the application on June 12, 2003. *People v. Quintana*, 762 N.Y.S.2d 866 (N.Y. App. Div. 2003). Petitioner did not appeal the Appellate Division's decision.

Petitioner filed this Petition under 28 U.S.C. § 2254 on August 4, 2003. Judge Jed S. Rakoff referred the case to Magistrate Judge James C. Francis IV. On June 4, 2004, Magistrate Judge Francis denied Petitioner's application for appointment of counsel. (Order, Jun. 4, 2004) On September 3, 2004, the case was reassigned to the undersigned, and the Court continued the order of reference to Magistrate Judge Francis. On November 18, 2004, Magistrate Judge Francis issued the Report and Recommendation, recommending that Petitioner's application for a writ of *habeas corpus* be denied. Petitioner timely filed his Objections on December 6, 2004.[2]

---

[2] Petitioner originally mailed his Objections at some point in December 2004, but the Office of Records lost and failed to file them. At the Court's request, on March 8, 2005, Petitioner faxed a second copy of his Objections, which was docketed and entered on the record. Petitioner indicates the original date of service as December 6, 2004, and the Court deems this as the original date of submission. (Objections, attached Affidavit of Service by Mail)

The Court disregards the erroneous entry on the docket report that indicates that objections were due December 2, 2004. Under Rule 6(a), Saturdays, Sundays, and Legal Holidays are to be excluded from the computation of time when the proscribed period is less than eleven days. *See* Fed. R. Civ. P. 6(a). Under Rule 6(e), three days are to be added to the

4

II.  Discussion

A.  Standard of Review

A district court reviewing a report and recommendation deciding a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Reyes v. Mantello*, No. 00 Civ. 8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (quoting 28 U.S.C. § 636(b)(1)(C)).  Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to the report and recommendation.  The objections must be "specific" and "written," *see* Fed. R. Civ. P. 72(b), and must be made "[w]ithin 10 days after being served with a copy of the recommended

---

proscribed period when service is made by mail.  *See* Fed. R. Civ. P. 6(e); Fed. R. Civ. P. 5(b)(2)(B).  Although the Second Circuit appears not to have addressed this issue, the Seventh Circuit has held that when both Rules 6(a) and (e) are to be utilized in computation of time, Rule 6(a) must be applied first in order to carry out Rule 6(e)'s function of adding time to compensate for delays in mail delivery. *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996) (finding Rule 72(b) required party to serve and file specific, written objections within ten days, so Rule 6(a) excluded weekends and holidays since the magistrate judge served his Report and Recommendation on parties by mail.  That turned the ten day period in question into fourteen, plus three for service by mail, for a total of seventeen calendar days).

Here, Rule 6(a) excludes November 20, 21, 27, and 28, the intervening Saturdays and Sundays, and November 25, Thanksgiving, turning ten days into fifteen.  This alone extends the deadline beyond December 2.  Further, Magistrate Judge Francis served Petitioner by mail, invoking Rule 6(e), which brings the total period to eighteen days.  Thus, the deadline for objections was December 6, 2004, and Petitioner is deemed to have timely served his Objections.  Thus, the Court need not address the validity of Petitioner's explanation for potential tardiness. (Objections 2) ("Ten day[s] i[s] not enough time to give an appropriate response to the Court because the Petitioner is not an attorney [and,] furthermore[,] speak[s] little English.  This Court is taking advantage of that situation.")

5

disposition . . . ." *Id.*; *see also* 28 U.S.C. § 636(b)(1).[3]

If a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation the party objected to under a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b) ("The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule."). However, where there are no objections, "a district court need only satisfy itself that there is no clear error on the face of the record." *Reyes*, 2003 WL 76997, at *1 (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

Here, Petitioner timely submitted objections to the Report and Recommendation. Nevertheless, the Court finds that, under a *de novo* standard of review, Magistrate Judge Francis's recommendations are correct and the Report and Recommendation should be adopted.

B. Petitioner's Claims

1. Speedy Trial

Magistrate Judge Francis's first recommendation is that Petitioner's state and federal

---

[3]Petitioner's Objections are specific to the extent that they refer to each of Magistrate Judge Francis's recommendations; however, in terms of presenting legal arguments, Petitioner's Objections are rather vague and incoherent. Nonetheless, given Petitioner's self-described lack of fluency in English, (Objections 2) ("[T]he Petitioner . . . speak[s] little English"), and *pro se* status, the Court should, and does, leniently construe the specificity of his Objections, *see Johnson v. Filion*, 232 F. Supp. 2d 98, 100 (S.D.N.Y. 2002) (finding that, when reviewing a report and recommendation, where "petitioner is proceeding *pro se*, 'leniency is generally accorded.'") (quoting *Bey v. Human Res. Admin.*, No. 97 Civ. 6616, 1999 WL 31122, at *2 (E.D.N.Y. Jan. 12, 1999).

speedy trial claims be rejected, since the state claims are not cognizable in a *habeas corpus* proceeding, and Petitioner's federal constitutional right to a speedy trial was not violated. In reaching this conclusion, Magistrate Judge Francis applied the four-factor test established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972),[4] and construed the facts in a light that could not have been more favorable to Petitioner. However, Magistrate Judge Francis still concluded that Petitioner's federal constitutional right to a speedy trial was not violated. For example, though Petitioner failed to provide a chronology of events or other relevant information in his direct appeal, Magistrate Judge Francis nonetheless considered such information in calculating the amount of the delay that could be attributed to the prosecution. (Report and Recommendation 10-11) Even after considering this information, however, Magistrate Judge Francis concluded that the prosecution could only be charged with less than half of the delay between indictment and trial. (Report and Recommendation 12) Moreover, because the prosecution's portion of the delay was the result of nothing worse than negligence, and because Petitioner offered no concrete proof of prejudice from the delay, Magistrate Judge Francis determined that the delay and the reasons for it did not violate Petitioner's federal speedy trial right.

In his enumerated list of objections, Petitioner articulates no specific basis to challenge Magistrate Judge Francis's conclusion. In particular, Petitioner offers no resistance to Magistrate Judge Francis's calculation of the portion of the delay that could reasonably be

---

[4] The *Barker* test requires the court to consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant caused by the delay. *Barker*, 407 U.S. at 530-33.

7

attributed to the prosecution, nor to his view that the delay was at worst the result of negligence.[5] Most importantly, though given a second chance, Petitioner failed to provide any additional reasons to believe that the delay was prejudicial. Therefore, the Court rejects Petitioner's Objections to Magistrate Judge Francis's recommendation regarding the speedy trial claim.

### 2. Improper Questioning

Magistrate Judge Francis further recommends that the Court dismiss Petitioner's due process claim as he was not deprived of a fundamentally fair trial due to the trial court's admission of certain interrogatories. The trial court permitted the questioning about the two wallets found on Petitioner during his arrest and the questioning of the Petitioner about the incarceration of his former domestic partner for the sale of drugs. Petitioner claims that these decisions violated state law and the United States Constitution. As with the state speedy trial claim, Magistrate Judge Francis properly rejected the claim that these lines of questioning violated state law. *See* 28 U.S.C. § 2254(a). As for the federal claim, Magistrate Judge Francis concluded that the evidentiary rulings that permitted the questioning would only justify habeas relief if the purported error deprived Petitioner of a fundamentally fair trial, and that Petitioner had not met that heavy burden. (Report and Recommendation 18-19)

Petitioner's objections to these recommendations are unpersuasive. Indeed, they merely repeat Petitioner's earlier complaints about the fact that the officer who was questioned about the

---

[5]Ignoring the fact that Magistrate Judge Francis did not hold against Petitioner the failure to provide a chronology of events on his direct appeal, in his list of objections Petitioner claims that his copy of the appellate brief submitted on his behalf had such a chronology, but, through alleged corruption, the brief filed with the Appellate Division did not. (Objections 3) This claim seems specious on its face, but is irrelevant given Magistrate Judge Francis's own calculations and the ultimate conclusion that any delay was not prejudicial to Petitioner.

wallets was not the arresting officer, that the testifying officer was incoherent, and that Petitioner did not, in fact, possess the two wallets, or that if he did, the wallets may have belonged to his alleged attackers.[6] None of these objections has any merit and they do not, taken individually or together, remotely suggest that the trial court's evidentiary rulings deprived Petitioner of a fundamentally fair trial. Indeed, each line of questioning appeared relevant to the issues raised by Petitioner at the trial. Moreover, Petitioner's protestation that the jury should have believed him over the prosecution's witnesses hardly presents a colorable claim.

### 3. Ineffective Assistance of Counsel

Lastly, Magistrate Judge Francis recommends rejection of the claim of ineffective assistance of appellate counsel as unexhausted and procedurally defaulted because Petitioner failed to apply for leave to appeal the decision of the Appellate Division to the New York Court of Appeals, and because Petitioner has failed to show cause for, and prejudice from, the state procedural bar to his claim. (Report and Recommendation 19-22)

Petitioner claims that no appeal to the Court of Appeals was available for the denial of his *coram nobis* petition, (Petition 3), but this is untrue. "In 2002, the New York Criminal Procedure Law was amended to allow permissive appeals to the New York Court of Appeals from the denial of *coram nobis* petitions." *Castro v. Fisher*, No. 04 Civ. 0346, 2004 WL 1637920, at *26 (S.D.N.Y. July 23, 2004) (internal citations omitted).

The Appellate Division ruled on Petitioner's *coram nobis* application on June 12, 2003. *Quintana*, 762 N.Y.S.2d at 866. Thus, Petitioner could have applied for leave to appeal the

---

[6]In his list of objections, Petitioner also challenges the credibility of the victim's testimony. (Objections 2) However, there is nothing about Petitioner's raw claim that the victim was untruthful that presents a basis to grant the Petition.

9

ruling to the Court of Appeals, but he did not. Moreover, the time in which he could seek leave to appeal has long since passed.[7]

It is on this point that the Court differs from the rationale of the Report and Recommendation, but not its ultimate conclusion. There appears to be a conflict of authority regarding when, if ever, it is appropriate for a federal court to deem a claim procedurally barred before providing petitioner with an opportunity to pursue fully his appellate rights in the New York state court system. In *Pesina v. Johnson*, the Second Circuit explained:

> We have held that the exhaustion requirement mandates that federal claims be

---

[7]An appeal from a denial of *coram nobis* relief must be taken "[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed . . . ." N.Y. C.P.L. § 460.10(5)(a). A party, however, may obtain up to a one-year extension of time to seek leave to appeal to the Court of Appeals. *See* N.Y. C.P.L. § 460.30. This one-year time limit is inflexible. *See People v. Thomas*, 47 N.Y.2d 37, 43 (1979) ("We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them."); *People v. Smith*, 696 N.Y.S.2d 720, 720 (App. Div. 1999) ("Because the motion for an extension of time to take an appeal was made more than one year and 30 days from the date of sentencing, the motion is untimely. Defendant's failing health does not excuse the failure to move within the statutory time period." (citing N.Y. C.P.L. § 460.30)).
    It is unclear that Petitioner could even allege facts that would entitle him to apply for the maximum one-year extension. Section 460.30 permits a would-be appellant to seek such an extension under limited circumstances, including allegedly improper conduct by a public official, any alleged improper conduct, death or disability of the appellant's attorney, or the inability of the appellant and his attorney to have communicated. Failure to allege any of these is fatal to an application to file an appeal beyond the thirty-day deadline. *See People v. Kaczynski*, 507 N.Y.S.2d 946 (App. Div. 1986) (denying motion to extend time pursuant to § 460.30 "on the ground that the papers fail to contain sworn allegations of facts claimed to establish improper conduct, inability to communicate, or other facts essential to support the motion").
    And, while it seems that Petitioner was unaware that he could seek leave to appeal the denial of his *coram nobis* application, (Petition 3) this does not excuse Petitioner's failure to exhaust under these circumstances. *See Castro*, 2004 WL 1637920, at *26 (rejecting petitioner's argument that "No Appeal Lies From Coram Nobis Traditionally"); *Priester v. Senkowski*, No. 01 Civ. 3441, 2002 WL 1448303, at *5 (S.D.N.Y. July 3, 2002) ("The mere failure of a petitioner to be aware of a particular area of the law . . . does not constitute 'cause.'").

> presented to the highest court of the pertinent state before a federal court may consider the petition. [Petitioner], by failing to appeal the denial of his Section 440.10 motion, has not fulfilled this requirement with respect to his ineffective assistance claim. . . . While [the] statutory limit may ultimately be held by state courts to preclude them from reaching the merits of [petitioner's] ineffective assistance claim, he must still present that claim to the highest state court. We have no authority to declare as a matter of state law that an appeal from the denial of his original Section 440.10 motion is unavailable or that he cannot raise the ineffective assistance claim in a new Section 440.10 action. Until [petitioner] presents his claim to the highest state court—whether or not it seems likely that he will be held to be procedurally barred—he has not exhausted available state procedures. *See* 28 U.S.C. § 2254(c).

913 F.2d 53, 54 (2d Cir. 1990) (per curiam) (internal citations omitted); *see also Letlow v. Sabourin*, 240 F. Supp. 2d 196, 201-02 (E.D.N.Y. 2002) ("Although we are now well beyond the one year time limit, and Petitioner has apparently not availed himself of the relief afforded by § 460.30, the Court hesitates to rule as a matter of state law that § 460.30 is unavailable.") (citations omitted).

However, "[t]he *Pesina* rule has been called into question by several district courts based on *Bossett v. Walker*, 41 F.3d 825 (2d Cir. 1994), and *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997), which note that it is pointless to require a habeas petitioner to return to state court to pursue a claim that is obviously procedurally barred." *Castillo v. Hodges*, No. 01 Civ. 2172, 2004 WL 613075, at *4 (S.D.N.Y. Mar. 29, 2004) (collecting cases); *see also Weeks v. Senkowski*, 275 F. Supp. 2d 331, 341 (E.D.N.Y. 2003) ("Although the *Pesina* rule clearly cuts against the grain of *Bossett* and mandates fruitless, time-consuming and expensive litigation, the case has never been explicitly overruled. In light of *Bossett*, this court will not follow *Pesina*. Petitioner's claim is rejected on the ground that it is procedurally barred. The Second Circuit rule in *Pesina* should be explicitly reconsidered.") (internal citations omitted).

While *Pesina* may well be on shaky ground, it cannot be nullified by this Court. *See*

*Shomo v. Maher*, No. 04 Civ. 4149, 2005 WL 743156, at *7 (Mar. 31, 2005) (finding that *Pesina* applied to claim that petitioner had failed to exhaust his claim of ineffective assistance of appellate counsel); *Priester*, 2002 WL 1448303, at *7 (explaining that while the "rule in *Pesina* has properly been called into question by several district courts . . . [,] [t]his Court . . . cannot overrule the holding in *Pesina*"); *Bloomer v. Costello*, No. 00 Civ. 5691, 2001 WL 62864, at *5 (S.D.N.Y. Jan. 24, 2001) ("[I]f *Pesina* is a 'derelict on the waters of the law,' it is not for this Court to sink it.") (quoting *Lambert v. California*, 355 U.S. 225, 232 (1957) (Frankfurter, J., dissenting)). Under the binding authority of *Pesina*, therefore, the Court concludes that it cannot dismiss Petitioner's claim on the basis that it is unexhausted but otherwise procedurally barred.

However, the Court has carefully reviewed the merits of Petitioner's claim that his appellate counsel was ineffective and finds that it is without merit.

> In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance 'fell below an objective standard of reasonableness,' and second, he must show that there is a 'reasonable probability' that but for counsel's error, the outcome would have been different.

*Lee v. Ricks*, 388 F. Supp. 2d 141, 151 (W.D.N.Y. 2005) (internal citations omitted). Furthermore, "[t]he issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate."[8] *Id*.

Under this rigorous test, appellate counsel need not present every non-frivolous

---

[8] Although the *Strickland* test was created in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

argument that could be made on petitioner's behalf. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (noting that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Thus, for example, omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'") (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker. *See Mayo*, 13 F.3d at 533. But, reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy . . . .").

Petitioner's claims of ineffectiveness of appellate counsel fall far short of the threshold. To begin, Petitioner's allegations of ineffectiveness are, to say the least, vague. In fact, in the Memorandum of Law submitted in support of his Petition, Petitioner offers no specific examples of omissions that appellate counsel made in her thoroughly researched and well written fifty-four-page opening brief or her fifteen-page reply brief.[9] However, in an attempt to liberally

---

[9]On appeal, counsel argued: (i) that defendant's statutory and constitutional speedy trial rights were violated; (ii) that the questioning regarding Petitioner's possession of two wallets and his domestic partner's drug conviction was improper; and (iii) the verdict was unsupported by the evidence. No claim is made, nor could it credibly be made, that these three claims were frivolous, or that they were poorly presented. Instead, the only claim is that appellate counsel should have made additional arguments. Brief for Defendant-Appellant, *People v. Quintana*,

13

construe Petitioner's claims, the Court has reviewed the submissions made by Petitioner in state court, including his motion to file a supplemental brief on his direct appeal and the available filings regarding his *coram nobis* application.

It appears from these filings that Petitioner principally believes that his appellate counsel erred by not challenging the Indictment initially returned against him. (Aff. of Zaharah R. Markoe Ex. 2) ("Markoe Aff."); (Petr.'s Aff. in Supp. of Mot. for Permission to File a Supplemental Appeal Br. ¶ 11) The core of this claim is that the initial Indictment returned in state court listed an inaccurate date for the crimes allegedly committed by Petitioner.[10] However, it is clear, even with the benefit of hindsight, that counsel's decision not to include this claim in the appeal of Petitioner's conviction likely was prudent and certainly not constitutionally erroneous. Indeed, the law in New York is that an indictment may be amended at any time prior to trial, so long as the correction does not unfairly surprise or prejudice the defendant. *See* N.Y. C.P.L.R. 200.70(1) ("At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits."); *People v. Little*, 23 A.D.3d 1117, 1118 (N.Y. App. Div. 2005) ("[T]he court properly granted the motion pursuant to which the People sought to correct a typographical error. The

---

No. 6725/95 (N.Y. Sup. Ct. Nov. 17, 2000).

[10]The Indictment listed the date as September 13, 1995, instead of March 24, 1995.

amendment did not change the theory of the prosecution or prejudice defendant."); *People v. Parrilla*, 285 A.D.2d 157, 160 (N.Y. App. Div. 2001) (noting that New York law allows amendment of indictment to correct any non-jurisdictional error).

Here, the amendment to the Indictment was approved by the trial court and merely corrected a typographical error that reflected an incorrect date of the occurrence of the alleged crimes. (Markoe Aff. Ex. 2; People's Mem. of Law Opposing Petr.'s Mot. to File a Supplemental Br. 6; Markoe Aff. Ex. 9; People's Mem. of Law Opposing Petr's *Coram Nobis* Application 6-7) There was no prejudice to Petitioner as the prosecutor's motion to amend was on notice and there was no change in the theory of the prosecution's case. (Markoe Aff. Ex. 2; People's Mem. of Law Opposing Petr.'s Mot. to File a Supp. Br. 6; Markoe Aff. Ex. 9; People's Mem. of Law Opposing Petr.'s *Coram Nobis* Application at 6-7) Moreover, the true date of the alleged crimes was included in the criminal complaint that was filed before the Indictment was returned and was presented to the grand jury that returned the initial Indictment. (Markoe Aff. Ex. 2; People's Mem. of Law Opposing Petitioner's Mot. to File a Supp. Br. 5-6) Thus, Petitioner's claim that his appellate counsel erred in omitting any challenge to the amended Indictment is meritless. *Cf. People v. LanFranco*, 717 N.Y.S.2d 140, 140 (N.Y. App. Div. 2000) ("Defendant was not deprived of a fair trial by his counsel's failure to oppose the People's application to amend the indictment as to date of occurrence, or to argue that the People had improperly proceeded on new theories of liability at trial. There was nothing prejudicial about the amendment, and the theories advanced by the People at trial were completely consistent with the indictment and the bill of particulars.").

Petitioner's submissions could be construed to make other claims of omission, but these

merit little discussion.  For example, Petitioner believes that his trial counsel was ineffective for failing to challenge the purportedly defective Indictment, failing to add to Petitioner's *pro se* speedy trial motion, and for failing to preclude the questioning regarding the two wallets found on Petitioner when arrested.  However, for the reasons discussed in Magistrate Judge Francis's thorough Report and Recommendation, this claim fails.  In short, the Indictment was not fatally defective, the speedy trial motion was not a winner, and could not have been a winner no matter what trial counsel could have done to support it, and there was nothing materially improper about the inquiry regarding the wallets.  Thus, there was nothing constitutionally improper about appellate counsel's decision not to claim ineffective assistance of trial counsel.[11]

\*                               \*                               \*

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1).  A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see generally United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability).  The Court finds that Petitioner will not be able to sustain this burden.  Thus, the Court declines to issue a certificate of appealability.

---

[11]The record reflects that Petitioner believes that someone altered his criminal history report to eliminate any proof that the initial Indictment was dismissed, and that his appellate counsel was in a conspiracy with the prosecutor to conceal prosecutorial misconduct.  (Markoe Aff. Ex. 9; Markoe Aff. in Opp'n to Petr.'s *Coram Nobis* Application ¶ 7)  However, there is no evidence in the record that supports these assertions.

### III. Conclusion

For the reasons stated herein, the Court rejects Petitioner's Objections to Magistrate Judge Francis's Report and Recommendation. Accordingly, it is hereby

ORDERED that the Report and Recommendation dated November 18, 2004 is ADOPTED as noted herein; and it is further

ORDERED that the Court declines to issue a certificate of appealability; and it is further

ORDERED that the Petition is DISMISSED; and it is further

ORDERED that the Clerk of the Court is directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

Dated: February 6, 2006
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE